UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

ALICIA LIMON,                          )    NO. SACV 06-00404-MAN
                                       )
              Plaintiff,               )
                                       )    MEMORANDUM OPINION
         v.                            )
                                       )    AND ORDER
MICHAEL J. ASTRUE,                     )
Commissioner of the                    )
Social Security Administration,        )
                                       )
              Defendant.               )
───────────────────────────────────────)

     Plaintiff filed a Complaint on April 14, 2006, seeking review of
the denial by the Social Security Commissioner ("Commissioner")[1] of
Plaintiff's claim for supplemental security income ("SSI").  On May 2,
2006, the parties consented to proceed before the undersigned United
States Magistrate Judge, pursuant to 28 U.S.C. § 636(c).  The parties
filed a Joint Stipulation on December 20, 2006, in which:  Plaintiff
seeks an order reversing the Commissioner's decision and directing the
payment of benefits or, alternatively, remanding the case for a new

_____

     [1]   Michael J. Astrue became the Commissioner of the Social
Security Administration on February 12, 2007, and is substituted in
place of former Commissioner Joanne B. Barnhart as the Defendant in this
action.  (See Fed. R. Civ. P. 25(d)(1); Section 205(g) of the Social
Security Act, last sentence, 42 U.S.C. § 405(g).)

1    hearing; and Defendant requests that the Commissioner's decision be
2    affirmed.   The Court has taken the parties' Joint Stipulation under
3    submission without oral argument.

4

5                    **SUMMARY OF ADMINISTRATIVE PROCEEDINGS**

6

7        Plaintiff filed her application for SSI on January 5, 2004.
8    (Administrative Record ("A.R.") 43-46.)  Plaintiff claims to have been
9    disabled since December 14, 2000, due to back pain, neck pain, and upper
10   extremity problems.  (A.R. 16, 62-63, 135-37.)  She has past relevant
11   work experience as a telemarketer, housekeeper, supervisor, housekeeper,
12   and domestic day worker.  (A.R. 16.)

13

14       The Commissioner denied Plaintiff's claim for benefits initially
15   and upon reconsideration.   On June 15, 2005, Plaintiff, who was
16   represented by counsel, testified at a hearing before Administrative Law
17   Judge Charles Stevenson ("ALJ").  (A.R. 127-57.)  On July 20, 2005, the
18   ALJ denied Plaintiff's claim for SSI (A.R. 12-19), and the Appeals
19   Council subsequently denied Plaintiff's request for review of the ALJ's
20   decision (A.R. 4-8).

21

22                    **SUMMARY OF ADMINISTRATIVE DECISION**

23

24       In his July 20, 2005 written decision, the ALJ found that Plaintiff
25   has not engaged in substantial gainful activity during the period at
26   issue.  (A.R. 19.)  The ALJ further found that Plaintiff has impairments
27   consisting of mild back degeneration "with subjective complaints far
28   exceeding objective findings," but that Plaintiff does not have an

                                    2

impairment or combination of impairments listed in, or medically equivalent to an impairment listed in, Appendix 1, Subpart P, Regulation No. 4. (*Id.*)  In addition, the ALJ found that Plaintiff's subjective complaints were not "totally credible." (*Id.*)

The ALJ determined that Plaintiff has the residual functional capacity to perform "light" work[2] generally with occasional stooping. (A.R. 19.)  Based on this residual functional capacity assessment and the testimony of a vocational expert, the ALJ found that Plaintiff was able to perform her past relevant work as a telemarketer. (*Id.*) Accordingly, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act during the time period at issue. (*Id.*)

## STANDARD OF REVIEW

This Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence. <u>Smolen v. Chater</u>, 80 F.3d 1273, 1279 (9th Cir. 1996).  The Commissioner's decision must stand if it is supported by substantial evidence and applies the appropriate legal standards. <u>Saelee v. Chater</u>, 94 F.3d 520, 521 (9th Cir. 1996).  Substantial evidence is "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." <u>Moncada v. Chater</u>, 60 F.3d 521, 523 (9th Cir. 1995).

---

[2]   "Light work" involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b), 416.967(b).

3

Although this Court cannot substitute its discretion for that of the Commissioner, this Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Sec'y. of Health and Human Servs, 846 F.2d 573, 576 (9th Cir. 1988); *see also* Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995). This Court must uphold the Commissioner's decision if it is supported by substantial evidence and free from legal error, even when the record reasonably supports more than one rational interpretation of the evidence. *Id.* at 1041; *see also* Morgan v. Comm'r of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999); Flaten v. Sec'y, 44 F.3d 1453, 1457 (9th Cir. 1995).

**DISCUSSION**

Plaintiff alleges four issues. First, she contends that the ALJ failed to provide a proper rationale for his residual functional capacity finding. Second, she contends that the ALJ improperly rejected the opinion of Dr. Sanjay Deshmukh.[3] Third, she contends the ALJ improperly rejected the opinion of Dr. Wayne Baybrook, a treating physician.[4] Fourth, she contends that the ALJ improperly addressed the

---

[3] Dr. Deshmukh examined Plaintiff in connection with her worker's compensation case. (A.R. 17, 110-20.)

[4] The ALJ identified Dr. Baybrook as Plaintiff's treating physician in connection with her worker's compensation case. (A.R. 16-17.)

4

issue of her credibility.  (Joint Stipulation ("Joint Stip.") at 3.)

**A.    The ALJ Erred In Assessing Plaintiff's Residual Functional Capacity.**

Residual functional capacity ("RFC") is the most a claimant can still do despite the limitations that the claimant may have.  20 C.F.R. § 416.945(a)(1).  "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record, including, *inter alia*, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" Robbins v. Social Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006) (citing 20 C.F.R. § 416.945(a)(3); Social Security Ruling ("SSR") 96-8p, 1996 WL 37184, at *5). Moreover, when determining a claimant's RFC, an ALJ must consider the combined effect of all of the claimant's impairments.  *See* 20 C.F.R. § 416.945(a)(2); SSR 96-8p, 1996 WL 37184, at *5.

The ALJ assessed Plaintiff's impairments and evaluated her RFC as follows:

While the claimant's impairments which are considered "severe" under the Regulations are mild back degeneration with subjective complaints far exceeding objective findings, she does not have an impairment or combination of impairments which meets or equals the requirements listed in any section of Appendix 1 to Subpart P of the Regulations No.4.  However, based on a thorough analysis of all the evidence including an analysis of her pain symptoms under the Regulations, the ALJ

finds that the claimant has a residual functional capacity to
perform light work generally, with occasional stooping.

(A.R. 18.)  Accordingly, the ALJ made a finding that Plaintiff had only
"mild back degeneration with subjective complaints far exceeding
objective findings" (A.R. 19.)

Plaintiff contends that the ALJ's finding that Plaintiff has the
RFC "to perform light work with occasional stooping" was improper,
because the ALJ failed to consider all of Plaintiff's physical
impairments. (Joint Sip. at 3.)  Specifically, Plaintiff alleges that
the ALJ failed to consider her upper extremity impairment. (*Id.* at 4.)

It is not clear from the ALJ's decision which medical opinion(s)
served as a basis for his RFC finding.[5]  However, it can be logically
inferred from the decision that the ALJ based his determination on the
opinions of Dr. Warren David Yu, a consulting orthopedist (A.R. 79-82),
and two State Agency physicians (A.R. 86-103).[6]  In summarizing these
opinions, the ALJ stated:

In February 2004, [Plaintiff] was seen by Warren David
Yu, M.D. for an orthopedic evaluation.  Dr. Yu observed [that

---

[5]    The ALJ did no specify the medical opinions on which he relied
as the basis for his decision.

[6]    Because the ALJ discussed the opinions of Dr. Yu, two State
Agency physicians, Dr. Deshmukh, and Dr. Baybrook, but rejected Dr.
Deshmukh's and Dr. Baybrook's opinions, it can be inferred that the ALJ
based his decision on Dr. Yu's and the two State Agency physicians'
opinions.

Plaintiff] had a normal gait.  However, she had moderate difficulty with heel and toe walking.  She had full motion of the cervical spine, but limited motion of the lumbar spine, with moderate lumbosacral tenderness and significant guarding.  Straight leg raising was negative.  She had full motion of the shoulders, hips, and bilateral upper and lower extremities.  There were no motor deficits.  There was no atrophy.  There were [sic] paresthesias into the anterior right knee.  There were no other sensory deficits.  Dr. Yu concluded that [Plaintiff] was able to sit, stand or walk up to 6 hours in an 8 hour day.  She could lift and carry 50 pounds occasionally, 25 pounds frequently (Exhibit 3F).

In March, 2004, the State Agency physician concluded that based on his review of all the evidence, [Plaintiff] was able to lift and carry 50 pounds occasionally, 25 pounds frequently.  She could stand and walk 6 hours in an 8 hour day, sit 6 hours in an 8 hour day (Exhibit 5F).  In June, 2004, another State Agency physician added [Plaintiff] could only occasionally stoop )Exhibit 6F).

(A.R. 16-17.)

The ALJ failed to note that Dr. Yu also found that Plaintiff's right hand grip strength was 0 pounds, and her left hand grip strength was 5 pounds.  (A.R. 81.)  Moreover, Dr. Yu concluded that "[Plaintiff]

7

should have *frequent*[7] use of the upper extremities for pushing, pulling, fine finger motor movements and handling."  (A.R. 82; emphasis added.)

Although the ALJ rejected examining physician Dr. Deshmukh's opinion,[8] when summarizing it, the ALJ stated, among other things:  "Dr. Deshmukh's diagnosis was . . . osteoarthritis bilateral hands, and bilateral wrist tendonitis.  Dr. Deshmukh concluded [that Plaintiff] was precluded from heavy work, forceful grasping, gripping and repetitive wrist motion, fine manipulation, heavy lifting, prolonged weight bearing, climbing, walking on uneven ground, squatting, kneeling, crouching, pivoting (Exhibit 11F)."  (A.R. 17.)

Thus, the record shows that both Dr. Yu and Dr. Deshmukh found that Plaintiff had upper extremity limitations, although the limitations imposed by Dr. Deshmukh were more extreme.  Significantly, Dr. Deshmukh's opinion stated that his conclusions were based, among other things, on objective factors such as MRIs, Jamar Dynamometer data, and his physical examination of Plaintiff.  (A.R. 119.)  In addition, the results of Plaintiff's laboratory test (MRI) from February 13, 2004, show a finding of "Degenerative changes . . . in the left acromioclavicular joint, the wrist and hands, the knees, the ankles and in the toes."  (A.R. 122.)  Despite this medical evidence of record, the ALJ did not address anywhere in his decision whether or not Plaintiff

---

[7]    "Frequently" is a term used in RFC determinations and means "occurring one-third to two-thirds of an 8-hour work day (cumulative, not continuous)."  (A.R. 86, 95.)

[8]    *See* the discussion of the ALJ's improper rejection of Dr. Deshmukh's opinion below.

8

has any upper extremity limitations.  (A.R. 15-19.)  Nor did the ALJ take into consideration Plaintiff's upper extremity limitations in assessing Plaintiff's RFC.  (*Id.*)  Finally, the ALJ did not give any reasons for ignoring the evidence regarding Plaintiff's upper extremity limitations.  This constitutes legal error.  *See* <u>Smolen</u>, 80 F.3d at 1282 (concluding that "[w]ithout explanation, [ALJ] ignored medical evidence of Smolen's other impairments and thereby erred"); <u>Cotton v. Bowen</u>, 799 F.2d 1403, 1408 (9th Cir. 1986)(holding that because "[ALJ] acknowledged Cotton's leg and ankle problems, but ignored her back problems" and did not give any reason for doing this, ALJ committed legal error).

Defendant argues that the ALJ did not err, reasoning that "the ALJ properly declined to find that Plaintiff had any additional significant upper extremity limitations," because two State Agency physicians found that Plaintiff had no upper extremity limitations.[9]  (Joint Stip. 7.) As Plaintiff correctly points out, the ALJ did not explicitly make any such finding, although it seems implicit that he did so.  In any event, whether or not the ALJ's decision fairly can be read to evidence a reliance on the State Agency physicians' conclusions regarding Plaintiff's upper extremity limitations, the fact remains that these two

---

[9]     These State Agency physicians concluded that Plaintiff could lift and carry 25 pounds frequently, and 50 pounds occasionally, she could sit and stand up to six hours in an eight hour day, and had no limitations in pulling and pushing other than those for lifting. (A.R. 87, 96.)   One of these two physicians restated Dr. Yu's finding regarding Plaintiff's hand gripping strength (i.e. that Plaintiff had 0 pound gripping strength in her right hand, and 5 pound gripping strength in her left hand), but did not address it in his conclusion.  (A.R. 91.) That physician also found that Plaintiff had no limitations in climbing, balancing, stooping, kneeling, crouching, and crawling.  (A.R. 88.)  The other State Agency physician, however, found that Plaintiff was limited to frequent climbing, balancing, kneeling, crouching, crawling, and could stoop occasionally.  (A.R. 97.)   The ALJ did not address this discrepancy in his decision.

state doctors were non-examining physicians whose opinions on this issue conflicted with those provided by examining physicians.

It is well-established that, generally, the Commissioner should give more weight to treating and examining physicians' opinions than to those of non-examining physicians. *See* <u>Andrews</u>, 53 F.3d at 1040-41 (explaining that more weight is given to opinions of treating and examining physicians, because they have greater opportunity to know and observe patient). It is an oft-repeated principle in this Circuit that, generally, an "examining physician's opinion carries more weight than a reviewing physician's." <u>Holohan v. Massanari</u>, 246 F.3d 1195, 1202 (9th Cir. 2001). *See also* <u>Lester v. Chater</u>, 81 F.3d 821, 831-32 (9th Cir. 1995)(stating that if a physician does not examine the claimant, his opinion, based only on documentary history and objective laboratory tests, cannot, standing alone, constitute substantial evidence to warrant rejecting the opinions of a treating and/or examining physician); 20 C.F.R. § 404.1527(d)(1)("Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you."). In this case, the ALJ did not provide the necessary explanation of why greater weight should be assigned to the opinions of the two State Agency physicians than to the opinions of Plaintiff's examining physicians (*i.e.*, Dr. Yu and Dr. Deshmukh).[10] *See, e.g.,* <u>Lester</u>, 81 F.3d at 831 (observing that an ALJ may reject the opinion of an examining physician in favor of that of a non-examining, non-treating physician "'when he gives specific,

_____

[10]     As discussed *infra*, the ALJ erred in rejecting the opinion of Dr. Deshmukh. Moreover, as noted above, the ALJ simply ignored Dr. Yu's upper extremity limitation finding, rather than stating any reason for rejecting it.

legitimate reasons for doing so, and those reasons are supported by substantial evidence of record'"; citation and emphasis omitted). Therefore, Defendant's argument that the ALJ properly declined to find upper extremity limitations, because none of the State Agency physicians found such limitations, necessarily fails.

Plaintiff further alleges that, because the ALJ failed to consider her upper extremity limitations, the hypothetical posed by the ALJ to the vocational expert to determine whether Plaintiff could do any of her past relevant work was incomplete. (Joint Stip. at 3.)  An ALJ may use the testimony of a vocational expert to determine the claimant's RFC, but the hypothetical posed to the vocational expert must consider all of the claimant's limitations.  Light v. Social Sec. Admin., 119 F.3d 789, 793 (9th Cir. 1997).  During Plaintiff's administrative hearing, the ALJ examined Ms. Allison, the vocational expert ("VE"), to determine whether Plaintiff could do any of her past relevant work.  (A.R. 152.) Posing a hypothetical to the VE, the ALJ stated:

Q. [ALJ] Consider light work, Ms. Allison.  Consider occasional stooping and crouching.  Can any of the past work be done?

A. [VE] The mild occupation could be done with the supervisor duties.  It's light unskilled work.

Q. [ALJ] What about the telemarketer?

A. [VE] Well, if we are counting that, that is sedentary.  So she could do that.

Q. [ALJ] There is another report in the file.  This was the most recent one from June of 2005.  It says no heavy work.  So

11

whatever that means from worker's compensation.  No forceful
and repetitive use of the wrists.  No fine manipulation.  Half
the time sitting and half the time standing.  Of course, there
is [sic] the changes of positions between them.  No uneven
terrain.  No climbing.  No balancing.  No stooping.  No
crouching and no crawling, and no kneeling.  Can any of the
past work be done?

A. [VE] No.  It could not be.

(A.R. 152.)

This excerpt from the administrative hearing shows that the ALJ
actually posed two hypothetical questions, but chose to base his
decision on the first hypothetical.[11]  It is clear from the record that
the ALJ did not include Plaintiff's upper extremity limitations in the
hypothetical on which he based his decision.  Because the record
contains medical evidence supporting the conclusion that Plaintiff has
upper extremity limitations, and because the ALJ did not include any
such limitations in the hypothetical on which the ALJ based his
decision, the VE's testimony cannot constitute substantial evidence to
support the ALJ's finding regarding Plaintiff's RFC, and his subsequent
finding that Plaintiff could do her past relevant work.  *See* Gallant v.
Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984)(stating that a vocational
expert's opinion regarding a claimant's residual functional capacity has

_____

[11]  Because the ALJ found that Plaintiff could do her past
relevant work as a telemarketer, it is obvious that the ALJ based his
finding only on the fist hypothetical he posed to the VE, *i.e.*, the
hypothetical that included light work, occasional stooping and crouching
but did not include any upper extremity limitation.

1 no evidentiary value, if the assumptions in the hypothetical posed to
2 the vocational expert are not supported by the record).

4 Accordingly, because there is evidence in the record (*i.e.*, the
5 opinions of Dr. Yu and Dr. Deshmukh) showing that Plaintiff has upper
6 extremity limitations, and because the ALJ failed to consider these
7 limitations, to resolve any conflict between them, and to include any
8 such limitations when posing a hypothetical to the VE and assessing
9 Plaintiff's RFC, the ALJ committed error in assessing Plaintiff's RFC.
10 Accordingly, the case should be remanded for proper consideration of all
11 of Plaintiff's impairments and an accurate assessment of her RFC. *See,*
12 *e.g.*, Cotton, 799 F.2d at 1408-09 (case remanded for further proceedings
13 when ALJ failed to take into account all of claimant's impairments).

15 **B.    The ALJ Improperly Rejected Dr. Deshmukh's And Dr. Baybrook's**
16 **Opinions.**[12]

18 An ALJ may reject a treating or examining physician's opinion, but
19 must give clear and convincing reasons for rejecting it.  Lester, 81
20 F.3d at 830.  An ALJ's failure to provide such reasons is reversible
21 error.  Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).

23 In his opinion dated November 6, 2002, Dr. Baybrook diagnosed
24 Plaintiff with sprain/strain lumbar spine, disk bulge/protrusion,
25 radiculopathy of lower extremities, sprain right ankle, and chronic

___

27 [12]   Because the ALJ gave identical reasons for rejecting the
28 opinions of both Dr. Baybrook and Dr. Deshmukh, these two issues are
discussed together.

13

1   sprain right knee.   (A.R. 72.)   Dr. Baybrook then concluded that
2   Plaintiff had "disability resulting in limitation to semi-sedentary work
3   with the freedom to sit, stand or walk as needed for pain relief."
4   (A.R. 74.)   In rejecting Dr. Baybrook's opinion, the ALJ stated:

6        The undersigned finds such a limitation overly restrictive in
7        light of the lack of actual objective findings.   Indeed, the
8        MRI purportedly showed only mild findings while the findings
9        on actual exam were generally subjective in nature.   Moreover,
10       Dr. Baybrook appears to be a treating physician in the
11       claimant's worker's compensation case.   He was selected and/or
12       hired by [Plaintiff] and his [sic] counsel to be an advocate
13       for [Plaintiff] in the said worker's compensation case.
14       Clearly, his opinion is biased in furtherance of [Plaintiff's]
15       case.   It is rejected accordingly.

17  (A.R. 16.)

19       In his opinion dated June 9, 2005, Dr. Deshmukh stated, among other
20  things, that Plaintiff "developed insidious onset of neck as well as
21  bilateral wrist and hand symptoms."   (A.R. 118.)   He further noted that
22  Plaintiff had osteoarthritic changes more noticeable in her right hand
23  second and third digits and she had decreased grip strength on Jamar
24  Dynamometer[13] bilaterally.   (*Id.*)   Dr. Deshmukh then stated that
25  Plaintiff continued to be symptomatic from her past back injury, had
26  multilevel disk disease, radiculopathy, and was quite limited due to

27  _____

28       [13]   Dynamometer is an instrument for measuring the degree of
     muscular power.   Stedman's Medical Dictionary (27 Ed. 2000).

14

1     pain.  (*Id.*)  In rejecting Dr. Deshmukh's opinion, the ALJ stated:

3         As with Dr. Baybrook, Dr. Deshmukh is a physician for
4         [Plaintiff] in her worker's compensation case.  Clearly, he is
5         an advocate for [Plaintiff] as he finds substantial
6         limitations based on substantial subjective symptoms with
7         minimal objective pathology.  Neither he nor Dr. Baybrook
8         explains the discrepancy between the subjective complaints and
9         the relatively benign objective pathology.  Dr. Deshmukh is
10        obviously biased in favor of [Plaintiff] and is thus not
11        credible.  His report is rejected accordingly.

13 (A.R. 17.)

15     The ALJ, thus, specified two reasons for rejecting the opinions of
16 both Dr. Deshmukh and Dr. Baybrook:  1) their opinions were not
17 supported by objective findings; and 2) they were Plaintiff's physicians
18 in her worker's compensation case and therefore "biased" in her favor.
19 Both reasons given by the ALJ are legally insufficient.  The Ninth
20 Circuit has held that "to say that medical opinions are not supported by
21 sufficient objective findings or are contrary to the preponderant
22 conclusions mandated by the objective findings does not achieve the
23 level of specificity our prior cases have required, even when the
24 objective factors are listed seriatim."  <u>Emberly v. Bowen</u>, 849 F.2d 418,
25 421-22 (9th Cir. 1988).  Moreover, the ALJ should "do more than to offer
26 his own conclusions."  *Id.*  Specifically, the ALJ must explain why his
27 interpretation, rather than a doctor's, is correct.  *Id.*  For example,
28 in <u>Reggenitter v. Comm'r of Social Sec. Admin.</u>, 166 F.3d 1294, 1299

(9th Cir. 1999), an ALJ was found to have erred in rejecting an examining psychologist's functional assessment on the ground that the examiner's conclusions were inconsistent with the results of a mental examination that the ALJ characterized as "benign." *See also* SSR 96-2p 1996 WL 374188 at 3 (explaining that "because the evidence is in medical, not lay, terms and information about these issues may be implied rather than stated, such an inconsistency may not be evident without an understanding of what the clinical signs and laboratory findings signify"); <u>Gonzalez Perez v. Sec'y. of Health and Human Services</u>, 812 F.2d 747, 749 (1st Cir. 1987) (an ALJ may not "substitute his own layman's opinion for the findings and opinion of a physician").

Here, the ALJ substituted his own lay conclusion that Plaintiff's pathology was "benign" in place of the doctors' medical opinions, without explaining why his interpretation of the MRI results is correct and the doctors' interpretation is not. Further, the ALJ's conclusion that Dr. Deshmukh and Dr. Baybrook based the limitations they found on Plaintiff's "substantial subjective symptoms with minimal objective pathology" (A.R. 17) misstates the record. Contrary to the ALJ's assertion that the doctors based their findings primarily on Plaintiff's subjective reports, both Dr. Deshmukh and Dr. Baybrook gave a detailed list of objective factors on which they based their opinions.[14] (A.R.

---

[14] For instance, Dr. Baybrook stated the following objective factors: decreased range of motion of lumbar spine, asymmetric deep tendon reflexes of lower extremities, positive straight leg raising, positive Bragard's test, decreased sharp/dull discrimination of the right lower extremity, MRI findings, right knee tenderness, decrease of motion and tenderness in right ankle. (A.R. 73.) Dr. Deshmukh specified the following objective factors: "previous MRI was positive for multilevel disk disease, restricted range of motion dorsolumbar spine on physical exam, hyperthrophic changes distal interphalangeal

73, 119.)   Thus, the ALJ's conclusion that Dr. Deshmukh's and Dr. Baybrook's opinions were not corroborated by objective findings is not supported by the evidence.

The ALJ's other reason for rejecting Dr. Baybrook's and Dr. Deshmukh's opinions is the purpose for which these opinions were obtained.   The ALJ found that, because the opinions of both doctors stemmed from Plaintiff's worker's compensation case, both physicians were "biased," and thus, their opinions necessarily were unreliable. (A.R. 16-17.)

In general, the source of a referral for an examination or treatment does not justify rejecting a medical opinion unless "the opinion itself provides grounds for suspicion as to its legitimacy." Nguyen v. Chater, 100 F.3d 1462, 1464 (9th Cir. 1996).   Likewise, the purpose for which a medical report was obtained is not a legitimate basis for rejecting it absent other evidence to undermine its credibility.   Reddick v. Chatter, 157 F.3d 715, 726 (9th Cir. 1998); see also Lester, 81 F.3d at 832 (holding that an ALJ erred in rejecting a physician's reports on the ground that they "were clearly obtained by the claimant's attorney for the purpose of litigation," and stating that "the purpose for which medical reports are obtained does not provide a legitimate basis for rejecting them").

As shown above, the ALJ's rejection of the opinions of Drs.

_____

joint right hand second and third digits with ulnar deviation, decreased grip strength Jamar Dynamometer, bilateral upper extremities, right ankle swelling, on examination."   (A.R. 119.)

Baybrook and Deshmukh on the purported basis that the opinions lacked objective support was error.  Other than the purported "bias" of these two doctors, the ALJ identified no other reason for rejecting their opinions.  However, the ALJ's assumption that these two doctors were "biased," and inherently untrustworthy, based solely on the fact that they provided treatment and an evaluation in connection with worker's compensation proceedings rests on rank speculation; it is not legitimate.  In short, neither of the two bases for rejecting these treating and examining physician opinions cited by the ALJ was clear and convincing.  Therefore, the ALJ's rejection of Dr. Baybrook's and Dr. Deshmukh's opinions was improper and their opinions should be credited on remand, absent the statement of legally proper, clear and convincing reasons for discrediting them.

**C.   The ALJ Improperly Addressed The Issue Of Plaintiff's Credibility**.

        Plaintiff contends that the ALJ improperly addressed her testimony. Specifically, Plaintiff alleges that the ALJ erred when he discounted her testimony on the grounds that:  1) Plaintiff did not show any condition that would cause her complaints (Joint Stip. at 17); 2) she was not receiving appropriate treatment (*id.* at 18); and 3) she was not a credible witness (*id.* at 18-19).

        During the administrative hearing, Plaintiff testified that she was unable to work due to pain and numbness in her hands, and pain in her neck, back, and shoulders.  (A.R. 130-40.)  The ALJ found that Plaintiff's allegations regarding her limitations were "not totally credible" (A.R. 19), and discounted her testimony, stating:

18

[Plaintiff] maintains she is unable to work due to her alleged subjective symptoms.  However, the undersigned notes [that Plaintiff] has not established a medically determinable impairment which would reasonably be expected to produce such limitations.  Indeed, her radiographs consistently showed only minimal findings.  Despite her worker's comp doctors' dire assessments, the record shows [that Plaintiff] has been managed by conservative care alone.  [Plaintiff] is not described as a surgical candidate, nor is there any evidence she has required extended periods of hospital confinement, emergency room treatment, use of a TENS unit, participation in a pain control clinic, or other extensive or significant forms of treatment commonly prescribed for intense pain. [Plaintiff] has no abnormalities of gait, nor are any assistive devices required.  While [Plaintiff] asserted a chronic and debilitating pain syndrome of extended duration, it is noted she exhibited no evidence of diffuse atrophy or muscle wasting, common indicators of chronic pain.  At the hearing [Plaintiff] testified that she could not fix food or do dishes, but later testified that the first thing she does in the morning is to fix breakfast and do the dishes.  She initially feigned knowledge of her own worker's comp case, but later gave a very detailed account when prompted by her attorney.  Clearly [Plaintiff] is not a credible witness.  At the hearing, [Plaintiff's] thoughts did not seem to wander and all questions were otherwise answered alertly and appropriately.  There is no credible evidence of regular usage of strong medication to alleviate pain that would

19

significantly impair [Plaintiff's] ability to do basic work activities.  There was no evidence in the medical record of any significant side effects.  Accordingly, the undersigned concludes [that Plaintiff's] testimony and evidence is not credible regarding the extent, intensity and duration of the alleged subjective symptoms and functional limitations and restrictions.

(A.R. 17-18.)

Courts give great weight to the ALJ's credibility assessment. Anderson v. Sullivan, 914 F.2d 1121, 1124 (9th Cir. 1990); Brawner v. Sec'y., 839 F.2d 432, 433 (9th Cir. 1988)(recognizing that ALJ's credibility determination should be given great weight when supported specifically).  In rendering a credibility evaluation, the ALJ may consider:  "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities."  Smolen, 80 F.3d at 1284.

Generally, an ALJ is free to disregard a claimant's testimony if the claimant fails to provide objective medical findings establishing a medical impairment that could reasonably be expected to produce the claimed pain or other symptoms alleged. See e.g., Cotton, 799 F.2d at 1407; 42 U.S.C. § 423(d)(5)(A).  Further, the ALJ may disbelieve the testimony of a claimant who testifies that he or she experiences pain on

20

a higher level than established by the objective medical findings, but the ALJ must make specific findings to justify such a decision. Cotton, 799 F.2d at 1407; *see also* Cequerra v. Secretary, 933 F.2d 735, 738 (9th Cir. 1991)(stating that when ALJ's decision rests on negative credibility evaluation, "the ALJ must make findings on the record and must support those findings by pointing to substantial evidence on the record"). Moreover, unless the ALJ finds that the claimant is malingering, the ALJ must give clear and convincing reasons for rejecting the claimant's testimony. Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004).

Here, the ALJ gave specific reasons for discrediting Plaintiff's testimony, which can be grouped into three basic categories:  1) Plaintiff failed to establish a medically determinable impairment that would reasonably be expected to produce such limitations; 2) Plaintiff did not undergo "significant" treatment; and 3) Plaintiff was not a credible witness.

With respect to the first category, the ALJ asserted that Plaintiff's "radiographs consistently showed only minimal findings" and that her "subjective complaints far exceed[ed] objective findings." (A.R. 17, 19.)  However, as discussed above, the ALJ erred in interpreting the evidence of record, because the ALJ substituted his own conclusions in place of the conclusions of Plaintiff's doctors, without explaining why his interpretation of Plaintiff's laboratory test (the MRI) was correct. Moreover, the ALJ found that Plaintiff had a "severe" impairment as defined by the Regulations. (A.R. 19.)  Once Plaintiff established that medically determinable impairment, the ALJ could not

1   reject her subjective symptom testimony simply because the evidence did
2   not establish the degree and severity of her alleged symptoms. *See*
3   Smolen, 80 F.3d 1282 (holding that claimant need not show that her
4   impairment could reasonably be expected to cause  severity of symptom
5   she has alleged; she need only show that it could reasonably have caused
6   some degree of symptom); Cotton, 799 F.2d at 1407 ("it is improper as a
7   matter of law for an ALJ to discredit excess pain testimony solely on
8   the ground that it is not fully corroborated by objective medical
9   findings").   Accordingly, the ALJ's first basis for rejecting
10  Plaintiff's subjective symptom testimony was erroneous.

12      Significantly, the ALJ did not find that Plaintiff was malingering.
13  Absent such a finding, the ALJ could discredit Plaintiff's testimony
14  only for clear and convincing reasons.  The ALJ found that Plaintiff's
15  lack of adequate medical treatment and her asserted lack of truthfulness
16  in her testimony warranted finding her not credible.  However, the ALJ's
17  stated reasons are not supported by substantial evidence of record.

19      The ALJ noted that Plaintiff was "managed by conservative care
20  alone," and there was no evidence of record that she has required "other
21  extensive or significant forms of treatment."  (A.R. 17.)  An ALJ may
22  reject a claimant's testimony if there is evidence showing that the
23  claimant failed to seek or request treatment, and the claimant's
24  physician failed to prescribe it.  Meanel v. Apfel, 172 F.3d 1111, 1114
25  (9th Cir. 1999).  However, disability benefits may not be denied on the
26  basis of a failure to seek treatment if the claimant could not afford
27  the treatment.  Gamble v. Chater, 68 F.3d 319, 321 (9th Cir. 1995); *see*
28  *also* Warre v. Comm'r. of Social Sec. Admin., 439 F.3d 1001, 1006 (9th

22

Cir. 2006)(confirming that "benefits may not be denied to a disabled claimant because of a failure to obtain treatment that claimant cannot afford").

Here, the record shows that at least two physicians, Dr. Baybrook and Dr. Doshi, prescribed medical treatment to Plaintiff. Specifically, Dr. Baybrook, Plaintiff's treating physician, opined that Plaintiff's "symptoms are expected to persist and be subject to flare-up and exacerbation." (A.R. 74.) "As a result of this[,] chiropractics and physical therapy should remain available to her." (*Id.*) Further, after examining Plaintiff, Dr. Doshi concluded that "[Plaintiff] is in need of emergency medical treatment; therefore, Medi-Cal should be granted on an emergency basis." (A.R. 105.) Plaintiff stated in her "Disability Report Appeal" that she was unable to receive the treatment prescribed by Dr. Doshi, because she did not have "medical [sic] or any other kind of medical insurance." (A.R. 63.) Finally, the examination of the administrative hearing transcript reveals that the ALJ did not attempt to find out why Plaintiff did not receive more "significant" treatment. (A.R. 146-57.) Thus, it appears that the ALJ ignored the evidence of record and, instead, assumed that Plaintiff did not seek medical treatment because she did not need it. An ALJ may not, as he did here, reach a conclusion and then justify it by ignoring competent evidence in the record that would suggest an opposite result. Gallant, 753 F.2d at 1456. Because the evidence of record indicated that Plaintiff was prescribed medical treatment but could not afford it, the ALJ's conclusion that Plaintiff's failure to seek treatment instead showed that she did not need it and, thus, was exaggerating her alleged subjective symptoms is not supported by substantial evidence.

Therefore, the lack of "extensive and significant treatment" mentioned by the ALJ cannot constitute a legally sufficient reason for discrediting Plaintiff's subjective symptom testimony.

The ALJ's last reason for rejecting Plaintiff's testimony was that Plaintiff "was not a credible witness." (A.R. 17-18.)  The ALJ based this conclusion on purported inconsistencies in Plaintiff's testimony at the hearing.  The transcript of the administrative hearing shows, however, that the ALJ misconstrued Plaintiff's statements.

Plaintiff testified that she could not do dishes and prepare food when her attorney asked her what activities Plaintiff cannot undertake due to her shoulder problem.  (A.R. 137.)  When Plaintiff's attorney subsequently asked her about her daily activities, Plaintiff answered as follows:

A. [Plaintiff] I get up.  I take a bath but that tires me out.

Q. [Attorney] Okay.  Do you cook for yourself?

A. [Plaintiff] I go to the kitchen.  I put on water for coffee and then right away I have to sit down, and then stay sitting.

Q. [Attorney] Okay.  Ms. Limon, do you cook for yourself, yes or no?

A. [Plaintiff] I have purchased some TV dinners.

Q. [Attorney] Do you cook for yourself, yes or no?

A. [Plaintiff] No.  Not right now.  I can't.

Q. [Attorney] Do you do light cleaning at home?

A. [Plaintiff] I wash whatever I dirty up in the way of dishes.  I make my bed.

24

1   (A.R. 145.)

2

3       The fact that Plaintiff initially said she could not do dishes and
4   "fix something to eat" and later testified that she washes the dishes
5   she uses, does not necessarily mean that she was not candid.
6   Plaintiff's two statements do not essentially contradict each other,
7   especially when viewed in the light of the fact that, during the
8   hearing, Plaintiff was assisted by an interpreter.  Moreover, the ALJ's
9   conclusion that Plaintiff stated that she "fixed breakfast" first thing
10  in the morning is not accurate.  Plaintiff only testified that she "put
11  on water for coffee" and did not cook.  Putting some water on for coffee
12  is simply not equivalent to "fixing breakfast."

13

14      With respect to the ALJ's statement that Plaintiff provided
15  inconsistent responses regarding her workers compensation case, the
16  record reflects that the ALJ asked Plaintiff, "What is the status of
17  your workers' compensation case?," and Plaintiff answered, "I don't
18  understand." (A.R. 146.)  The ALJ then proceeded to question Plaintiff
19  about her last job and other jobs. (*Id.*)  Later on, when the ALJ asked
20  Plaintiff about her job as a telemarketer, Plaintiff explained that she
21  had to leave that job because she developed throat problems and could
22  not speak. (A.R. 148.)  The ALJ then asked her:

23

24      Q. [ALJ] Did that result in a workers' compensation claim?
25      A. [Plaintiff] No.  No.  I didn't do that.  I didn't claim
26      anything.
27      Q. [ALJ] So you do know what workers' compensation is, right?
28      A. [Plaintiff] Now that I was compensated at Terra Mina I do

1   understand that.

2

3   (A.R. 148.)

4

5        On the basis of these questions and answers, the ALJ concluded that
6   Plaintiff "feigned knowledge" of her own worker's compensation case.
7   However, Plaintiff's answer that she did not "understand" does not
8   necessarily mean that she "feigned knowledge" of her worker's
9   compensation case.  Again, given the fact that she was aided by an
10  interpreter, it might have been a statement showing Plaintiff's
11  difficulty in comprehending the subject of the ALJ's questioning.
12  Further, the ALJ mentioned that Plaintiff answered his questions
13  regarding her worker's compensation case only after Plaintiff was
14  prompted by her attorney.  However, the transcript of the hearing does
15  not show such prompting by Plaintiff's attorney.  Thus, the ALJ's
16  reasons for discrediting Plaintiff's credibility are not well-founded
17  and do not "pass muster."  <u>Rogers v. Comm'r. of Social Sec.</u>, 486 F.3d
18  234, 248 (9th Cir. 2007)(stating that an ALJ's explanations as to
19  claimant's credibility will not pass muster if they are inconsistent
20  with the record and relevant evidence, and finding that an ALJ erred
21  when he mischaracterized claimant's testimony).

22

23       For the foregoing reasons, the Court finds that the ALJ's
24  credibility assessment was erroneous.

25

26  **D.**   **<u>Remand Is Required</u>.**

27

28       The decision whether to remand for further proceedings or order an

26

1   immediate award of benefits is within the district court's discretion.
2   Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000).   Where no
3   useful purpose would be served by further administrative proceedings, or
4   where the record has been fully developed, it is appropriate to exercise
5   this discretion to direct an immediate award of benefits.   *Id.* at 1179
6   ("the decision of whether to remand for further proceedings turns upon
7   the likely utility of such proceedings").   However, where there are
8   outstanding issues that must be resolved before a determination of
9   disability can be made, and it is not clear from the record that the ALJ
10  would be required to find the claimant disabled if all the evidence were
11  properly evaluated, remand is appropriate.   *Id.*

12

13      Here, as discussed above, the ALJ failed to assess properly both
14  Plaintiff's credibility, due to several errors, and her RFC, due to his
15  failure to consider her possible upper extremity impairments and the
16  opinions of two of her physicians.   Because it is unclear what work
17  Plaintiff could perform, if any, if her subjective complaints and her
18  physicians' opinions were assessed properly, and her claimed upper
19  extremity limitations were considered, remand is necessary to make a new
20  disability determination.   *See, e.g.,* Benecke v. Barnhart, 379 F.3d 587,
21  593 (9th Cir. 2004)(where ALJ erred by discounting treating physicians'
22  opinions, remand for further proceedings is appropriate if enhancement
23  of the record would be useful); McAllister v. Sullivan, 888 F.2d 599,
24  603 (9th Cir. 1989)(remand appropriate to remedy defects in the record);
25  Cotton, 799 F.2d at 1408-09 (remand needed when the ALJ failed to take
26  into account all of the claimant's impairments).

27

28

**CONCLUSION**

Accordingly, for the reasons stated above, the denial of benefits is REVERSED, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order.  Judgment shall be entered reversing the decision of the Commissioner, and remanding the matter for further administrative action consistent with this Memorandum Opinion and Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for Plaintiff and for Defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: August 15, 2007

                                        /s/
                              _____
                              MARGARET A. NAGLE
                              UNITED STATES MAGISTRATE JUDGE

28